AN LE (State Bar No. 260817)
al@severson.com
SEVERSON & WERSON
A Professional Corporation
The Atrium
19100 Von Karman Avenue, Suite 700
Irvine, California 92612
Telephone: (949) 442-7110
Facsimile: (949) 442-7118

MARK I. WRAIGHT (State Bar No. 228303)
miw@severson.com
EVELINA MANUKYAN (State Bar No. 233262)
exm@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Defendant
WELLS FARGO BANK, N.A.
(erroneously sued as Wells Fargo Bank)

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA — SOUTHERN DIVISION

| | |
|---|---|
| TIMOTHY T. MERRITT JR. & CATHY MITCHELL,<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO BANK,<br><br>Defendant. | Case No. 8:18-cv-01960-JVS-(JDEx)<br>Hon. James V. Selna<br>Ctrm. 10C – Santa Ana<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>Date:   June 10, 2019<br>Time:  1:30 p.m.<br>Crtrm.: 10C<br>Judge: Hon. James V. Selna<br><br>Action Filed:  September 21, 2018<br>Removal Date: October 31, 2018<br>First Amended: January 9, 2019<br>Trial Date:    March 10, 2020 |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION AND SUMMARY OF THIS MOTION ........................... 6

II. THE PERTINENT ALLEGATIONS ................................................................ 6

III. APPLICABLE LEGAL STANDARD ............................................................. 8

IV. PLAINTIFFS' ENTIRE SAC IS INSUFFICIENT AND SHOULD BE DISMISSED WITH PREJUDICE ................................................................... 9

    A. Wells Fargo's Renewed Motion To Dismiss Merritt's 42 USC §1981 Claim Is Proper ................................................................ 9

    B. Merritt's 42 USC §1981 Claim Is Rendered Further Inadequate Under New Authority ........................................................ 10

    C. Plaintiffs' Unruh Act Claim Must Be Dismissed ................................ 14

        1. The Unruh Claim Has Not Been Authorized by the Court ........ 15

        2. The Unruh Claim Is Without Merit ............................................ 15

    D. Plaintiffs Fail to Save Their Defamation Claims ................................ 17

V. CONCLUSION ................................................................................................ 19

# TABLE OF AUTHORITIES

**PAEG(S)**

**FEDERAL CASES**

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ...................................... 8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ................................. 8, 9

*Cabanas v. Gloodt Associates*,
    942 F.Supp. 1295 (E.D. Cal. 1996) ...................................................................... 18

*Carrico v. City and County of San Francisco*
    656 F.3d 1002 (9th Cir. 2011) .............................................................................. 15

*Domino's Pizza, Inc. v. McDonald*,
    546 U.S. 470 (2006) .............................................................................................. 10

*Duronslet v. County of Los Angeles*,
    266 F.Supp.3d 1213 (C.D. Cal. June 20, 2017) .................................................... 16

*Gen. Bldg. Contractors Ass'n v. Pennsylvania*,
    458 U.S. 375, 102 S. Ct. 3141, 73 L. Ed. 2d 835 (1982) ...................................... 11

*Green v. State Bar of Texas*,
    27 F.3d 1083 (5th Cir 1994) ................................................................................. 11

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ................................................................................ 9

*McHenry v. Renne*,
    84 F.3d 1172 (9th Cir. 1996) .................................................................................. 8

*Melancon v. Texaco, Inc.*,
    659 F.2d 551 (5th Cir. 1981) ................................................................................ 10

*Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    7 F.3d 1085 (2d Cir 1993) .................................................................................... 11

*Morris v. Office Max, Inc.*,
    89 F.3d 411 (7th Cir 1996) ................................................................................... 11

*Nat'l Ass'n of African Am.-Owned Media v. Charter Commc'n, Inc.*,
   915 F.3d 617 (9th Cir., Feb. 4, 2019) .................................................. 12, 13, 14, 16

*Reese v. BP Exploration (Alaska) Inc.*,
   643 F.3d 681 (9th Cir. 2011) ............................................................................. 9

*Saul v. United States*,
   928 F.2d 829 (9th Cir.1991) ....................................................................... 15, 19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007) .................................... 9

*Toole v. Baxter Healthcare Corp.*,
   235 F.3d 1307 (11th Cir. 2000) ........................................................................ 10

**STATE CASES**

*Cuenca v. Safeway San Francisco Employees Fed. Credit Union*,
   180 Cal.App.3d 985 (1986) ............................................................................. 18

*Harris v. Capital Growth Investors XIV*,
   52 Cal.3d 1142, 278 Cal.Rptr. 614, 805 P.2d 873 (1991) .................................. 16

*Howe v. Bank of America, N.A.*
   (2009) 179 Cal.App.4th 1443 .......................................................................... 16

*Lazar v. Hertz Corp.*
   (1999) 69 Cal.App.4th 1494 ............................................................................ 16

**FEDERAL STATUTES**

42 U.S.C.
   § 1981 ..................................................................................................... passim
   § 1981(a) .......................................................................................................... 11

**STATE STATUTES**

California Civil Code
   § 51 ......................................................................................................... passim

California Welfare and Institutions Code
   § 15630.1 ................................................................................................... 14, 16
   § 15630.1(d)(1) ................................................................................................. 7
   § 15630.1 (f) ..................................................................................................... 8

**RULES**

Federal Rules of Civil Procedure
   8(a)(2) ................................................................................................. 8
   12(b)(6) ............................................................................................ 8, 9
   59 ..................................................................................................... 10

**OTHER AUTHORITIES**

5B Wright & Miller Federal Practice and Procedure
   Civil Code § 1357 (3d ed. 2004) ......................................................... 9

## I. INTRODUCTION AND SUMMARY OF THIS MOTION

This is Timothy Merritt's and Cathy Mitchell's third iteration of their complaint accusing Wells Fargo of racial discrimination. Plaintiffs claim that Wells Fargo refused to let Merritt apply for a small personal loan to buy video games because of his race. Plaintiffs also claim Wells Fargo suspected Mitchell of taking financial advantage of her son purely because of her race. Not only have Plaintiffs again failed to plead sufficient facts establishing viable claims, but the few relevant facts they have pleaded disprove their theory of the case.

According to the SAC, Plaintiffs came to the Cerritos branch of Wells Fargo so Timothy could apply for a personal loan "of approximately $1,500 to purchase sports equipment and video games he desired." (ECF 35, SAC ¶ 20.) During the routine application process, Wells Fargo's banker, Angelique Rodriguez, asked Merritt some basic questions which Merritt did not answer because of a speech impediment. Instead, Mitchell, without explaining Merritt's speech impediment, insisted on speaking on behalf of her adult son. Even after Rodriguez asked to hear from Merritt.

The SAC alleges that Rodriguez denied the loan and then made a report to Child Protective Services and/or the police. Plaintiffs conclude that Wells Fargo's actions can *only* be explained by racial discrimination. In support of their conclusion, Plaintiffs allege that Rodriguez was hostile and impatient, showed poor body language, and, worst of all, directed a racial epithet at Mitchell.

Despite their best creative efforts to paint the facts favorably, Plaintiffs conclusion that they were the victims of race discrimination is unfounded. As will be demonstrated below, the facts alleged in the SAC are not enough to plead a plausible case for intentional race discrimination.

## II. THE PERTINENT ALLEGATIONS

On February 8, 2018, Plaintiffs went to the Cerritos branch of Wells Fargo "to see about obtaining a small personal loan" for Merritt so that he could "purchase

football equipment as well as video games [Merritt] desired."[1] (ECF 35, SAC ¶¶ 20, 21.)  Plaintiffs were greeted by Joseph, a Wells Fargo employee, with whom they had a prior relationship.[2] (ECF 35, SAC ¶ 21.)  Joseph however was unavailable to assist them and so introduced them to another banker, Angelique Rodriguez.  (*Id.*)

Plaintiffs allege that as soon as they began interacting with Ms. Rodriguez "they detected hostility, impatience, intolerance, and distrust."  (ECF 35, SAC ¶ 22.)

Plaintiffs allege that Mitchell "tried to explain to Ms. Rodriguez what her son's needs were" but that "Ms. Rodriguez proceeded to repeatedly interrupt Ms. Mitchell" and "sneer[ed] that she (Ms. Rodriguez) only wanted to speak to … Timothy."  (ECF 35, SAC ¶ 24.)  Plaintiffs now allege that Merritt attempted to answer Ms. Rodríguez's questions, but it was too late.  (*Id.*) Plaintiffs further allege that Merritt was unable to complete the application and that Ms. Rodriguez accused Ms. Mitchell of "using of her "incompetent" son to open a credit line so that she could steal the money for herself" and said "I don't need to speak to you, [racial epithet]." (ECF 35, SAC ¶ 25.)

Finally, Plaintiffs allege, *upon information and belief*, that "Wells Fargo informed California Child Protective Services and the Los Angeles Sherriff's Department that Ms. Mitchell tried to open the account in her own name…" (ECF 35, SAC¶ 29.)  Reports of suspected financial abuse are strictly confidential under the Welfare & Institutions Code § 15630.1(d)(1).  Therefore Wells Fargo cannot confirm this allegation.  But as the Court commented in its December 10, 2018

---

[1] So far, Plaintiffs have never explained why it was necessary for Merritt to purchase video games or sports equipment.  Nor have they explained why Merritt needed to take out a personal loan to buy things (especially since he had recently applied for a personal credit card).  Nor have they explained why Mitchell did not apply for a loan to buy the things her son desired.

[2] Plaintiffs allege that in July 2017, Joseph help Merritt open a checking account and, on another date, a credit card in Merritt's name.  (ECF 35, SAC ¶¶ 17,19.)

Order, it "is a plausible inference because the Incident Report indicates that the Sheriff's Deputy went to Plaintiffs' residence in response to a 'suspected dependent adult/elder abuse call.'"[3] (ECF 12-1, page 4 of 6.)

To be very clear, Wells Fargo strongly denies Plaintiffs' allegations of racial discrimination or that Plaintiffs' race was any factor whatsoever in its handling of Merritt's loan application. But taking the allegations at face value for the limited purpose of this motion, the allegations fall short of establishing the necessary elements of Plaintiffs' claims. To the contrary, the facts alleged by the Plaintiffs support a far more plausible inference that Wells Fargo's alleged actions were motivated by legitimate and non-discriminatory reasons.

### III. APPLICABLE LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to include in his complaint "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Complaints that contain allegations that are "argumentative, prolix, replete with redundancy, and largely irrelevant" are disfavored because they unfairly burden litigants and judges with the task of identifying a plaintiff's claim. *McHenry v. Renne*, 84 F.3d 1172, 1177, 1180 (9th Cir. 1996).

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a plaintiff's statement of his claim for relief. While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

---

[3] Indeed, as a "mandated reporter," if Ms. Rodriguez suspected that Ms. Mitchell may be engaged in financial abuse of her dependent son, she was required to file a report with APS and would be subject to civil penalties if she did not. See California Welfare and Institutions Code § 15630.1 (f)

The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," and a complaint that pleads facts that are "merely consistent with" a defendant's liability "stops short of the line between possibility and plausibility." *Id.* (quoting *Twombly*, 550 U.S. at 555, 557) (internal quotation marks omitted).

In considering a Rule 12(b)(6) motion, a court may consider allegations contained in the pleadings, exhibits attached to or incorporated by reference into the complaint, and matters properly subject to judicial notice. 5B Wright & Miller Fed. Prac. & Proc. Civ. § 1357 (3d ed. 2004); see also *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007). When determining whether a claim has been stated, the Court accepts as true all well-pleaded factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc*., 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.,* 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted).

### IV. PLAINTIFFS' ENTIRE SAC IS INSUFFICIENT AND SHOULD BE DISMISSED WITH PREJUDICE

**A. Wells Fargo's Renewed Motion To Dismiss Merritt's 42 USC §1981 Claim Is Proper**

At the outset, Wells Fargo is cognizant that Merritt's claim under 42 USC §1981 had survived the previous motion to dismiss. However, Wells Fargo believes that the current motion to dismiss the same claim is proper for two reasons.

First, a district court has an inherent power to reconsider and modify its interlocutory orders. "As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an

interlocutory order for cause seen by it to be sufficient." *Melancon v. Texaco, Inc.,* 659 F.2d 551, 553 (5th Cir. 1981); see also *Toole v. Baxter Healthcare Corp.,* 235 F.3d 1307, 1315 (11th Cir. 2000) (stating that when a district court issues "an interlocutory order, the district court has plenary power over it and this power to reconsider, revise, alter or amend the interlocutory order is not subject to the limitations of Rule 59").

Wells Fargo analyzed the Court's order on motion to dismiss the first amended complaint and addresses the Court's concerns in this motion. Specifically, Wells Fargo's prior analysis of Plaintiffs' claims was focused in significant part on the Incident Report, the facts gleaned from the Report and the conflicts between the facts gleaned from the Incident Report and the facts alleged in Plaintiffs' FAC. Wells Fargo's focus on the Incident Report was reasonable and justified, since the Court itself relied on the Incident Report to supply the factual allegations for Plaintiffs' original complaint. (ECF 12-1) .

Wells Fargo's present motion analyzes Plaintiffs' allegations found strictly within the four corners of the SAC and in view of the recent Ninth Circuit decision directly on point.

Second, Wells Fargo moves to dismiss Plaintiffs' newly alleged claim under the California Unruh Civil Rights Act ("Unruh" or "Unruh Act"). The allegations forming the basis of Plaintiffs' state and federal discrimination claims are identical. The analysis of the two claims is sufficiently close, where if Wells Fargo's arguments on the Unruh claim prevail, and they should, then Merritt's claim under 42 USC §1981 must fail too.

**B.  Merritt's 42 USC §1981 Claim Is Rendered Further Inadequate Under New Authority**

"Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006). The statute provides that "[a]ll persons … shall have the same right in every

State and Territory to make and enforce contracts … as is enjoyed by white citizens ….." 42 U.S.C. § 1981(a).

To plead a claim under Section 1981, plaintiffs must allege that "(1) they are members of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more activities enumerated in the statute (*i.e*., the making of and enforcing a contract)." *Morris v. Office Max, Inc*., 89 F.3d 411, 413-14 (7th Cir 1996); *Green v. State Bar of Texas*, 27 F.3d 1083, 1086 (5th Cir 1994); *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 7 F.3d 1085, 1087 (2d Cir 1993). The statute "reaches only *purposeful* discrimination." *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 389, 102 S. Ct. 3141, 73 L. Ed. 2d 835 (1982) (*emphasis added*).

Merritt's allegations in the SAC are not enough to establish the second, critical element of the cause of action: intentional or purposeful discrimination based on race.

No facts stated in the SAC support a *plausible inference* that Merritt's race had anything to do with the denial of Merritt's personal loan application. To the contrary, the facts alleged in the SAC demonstrate reasonable, legitimate conduct by Wells Fargo's banker, who declined to process Merritt's loan application. Indeed, the allegations in the SAC establish that the banker's refusal to process the loan application was mandatory, because of reasonable suspicions of financial abuse. Vague allegations that Plaintiffs' "detected hostility, impatience, intolerance, and distrust" from Ms. Rodriguez, even when combined with the use of an alleged epithet, cannot overcome the inference of legitimate conduct involving detection and prevention of potential abuse of a dependent adult to state a claim for purposeful discrimination.

Plaintiffs allege that on February 8, 2019, they came to Wells Fargo to apply for a "small personal loan" in Merritt's name. (ECF 35, SAC ¶ 21.) Plaintiffs further allege that as soon as they began interacting with Ms. Rodriguez they

concluded that they are being subjected to racial discrimination based on Ms. Rodriguez's "facial expression, body language, tone, language, and attitude…" (ECF 35, SAC ¶22.)  Plaintiffs' description of the evidence of the banker's discriminatory intent is ambiguous, to say the least. On the other hand, Plaintiffs have alleged that they have experienced discriminatory treatment throughout their lives.  Even accepting their allegations as true, there can be no doubt that Plaintiffs' viewed Ms. Rodriguez's body language and tone through the lens of their subjective experiences.  But that does not mean their personal interpretation of Ms. Rodriguez's body language and tone establishes a plausible claim of intentional racial discrimination.  Especially when the few specific facts alleged establish a plausible legitimate explanation for Ms. Rodriguez's actions. In addition, in describing the alleged incident, Plaintiffs make no attempt to show that Ms. Rodriguez exhibited different behavior when dealing with white customers on that day.

To boost their effort to plead the crucial element of intentional discrimination, Plaintiffs allege that towards the end of their interaction, Ms. Rodriguez "angrily spat" a racial epithet towards Mitchell.  (ECF 35, SAC ¶25.)  The allegation that a bank employee used a racial epithet is bad enough.  This rhetorical flourish adds nothing and does not establish that race was a motivating factor in Ms. Rodriguez' handling of Merritt's loan application.

This very issue was addressed in a recent Ninth Circuit decision in *Nat'l Ass'n of African Am.-Owned Media v. Charter Commc'n, Inc.,* 915 F.3d 617 (9th Cir., Feb. 4, 2019) ("*Charter*").  Plaintiffs' complaint in that case recounted numerous unsuccessful efforts by plaintiffs to enter into contract negotiations with the defendant.  The complaint also alleged discriminatory behavior and derogatory racist comments about African Americans made by the defendant's senior executives.  Charter moved to dismiss, arguing that plaintiffs failed to plead that racial animus was the but-for cause of Charter's conduct.  The district court denied

the motion, finding that plaintiffs need to plead only that racism was a motivating factor in defendant's decision not to contract and plaintiffs satisfied that requirement.  The Court of Appeal affirmed, finding that mixed-motive claims were cognizable under §1981.  The Court then specifically analyzed the allegations that it deemed sufficient to overcome Charter's motion to dismiss.  The Court said:

> Plaintiffs' FAC alleged various instances of contradictory, disingenuous, and disrespectful behavior on the part of Charter and its executives. These allegations include: a pattern of declining and delaying meetings with Entertainment Studios, combined with a refusal to contract despite presenting intimations to the contrary; the offering of "provably false" explanations for its reluctance to carry Entertainment Studios' channels; and Singer's repeated misleading and insulting communications with Entertainment Studios. We acknowledge that, *even when considered in the light most favorable to Plaintiffs, these claims alone would not constitute a plausible § 1981 claim. Corporate red tape, inconsistent decision-making among network leadership, and even boorish executives are not themselves necessarily indicative of discrimination.*
>
> However, *Plaintiffs supplemented these claims* by pleading that white-owned companies were not treated similarly. For example, the FAC stated that, although Charter informed Entertainment Studios that bandwidth and operational demands prevented carriage of the latter's channels, Charter secured contracts with "white-owned, lesser-known" networks during the same period. Charter also allegedly pointed to Entertainment Studios' tracking model as a ground for refusing to contract, while simultaneously accepting white-owned channels that used the same model. Plaintiffs further alleged that Charter's CEO, Rutledge, refused to meet with Entertainment Studios' African-American owner, Allen, despite meeting with the heads of white-owned programmers during the same time period. We conclude that these allegations, when accepted as true and viewed in the light most favorable to Plaintiffs, are sufficient under § 1981 to plausibly claim that Charter denied Entertainment Studios the same right to contract as white-owned companies.

*Charter* at 626-627 (*emphasis added*)

Here, Plaintiffs have not plead a plausible claim for relief in the SAC. Applying the same analysis as in the *Charter* case, Ms. Rodriguez's alleged behavior, including the use of the racial epithet, boorish and horrible as it may be, *without more,* is not "necessarily indicative of discrimination" and not sufficient to support a plausible §1981 claim.  See *Charter*, at 626.  The SAC here is bereft of any, much less plausible allegations, that similarly situated white customers were

treated differently by Wells Fargo, *i.e.* that Wells Fargo processed loan applications for white customers whose behavior raised objective red flags concerning financial abuse of a dependent adult . (See SAC, *passim*.) This is a stark contrast with *Charter* case plaintiffs, who supplemented their claims by alleging specific instances where defendants contracted with similarly situated white counterparts. See *Charter* at 626-627. The absence of such allegations is fatal to the SAC.

It is worth noting, that at the time of filing their SAC, Plaintiffs (via counsel) were well aware of the pleading requirements outlined in *Charter*, as they themselves brought this case to the Court's attention as early as March 11, 2019. (ECF 32-1) Nonetheless, they make no effort whatsoever to allege facts that Wells Fargo's treatment of the similarly situated white customers was different. This signals to the Court, loud and clear, that they simply cannot state such allegations plausibly, truthfully, and in good faith.

Despite Plaintiffs' self-serving conclusions, the allegations in the SAC do not make a case of *intentional* racial discrimination (or any discrimination, really). What they do illustrate is that Ms. Rodriguez, as a mandatory reporter of suspected financial abuse of a depended adult, did her job by observing objective signs of potential abuse in Merritt and Mitchell's behavior and stopped the loan application process, thus preventing the potential abuse. Wells Fargo should not and cannot be asked to give special treatment to any protected class when complying with its mandatory reporting obligations under California Welfare and Institutions Code § 15630.1. Indeed, it's not too hard to imagine the types of claims and lawsuits that would be aimed at Wells Fargo if an employee elected to not comply with the law because of a customer's race.

Based on the foregoing, Merritt's allegations in the SAC are inadequate to support a viable claim under §1981. The claim must be dismissed with prejudice.

**C. Plaintiffs' Unruh Act Claim Must Be Dismissed**

In a last ditch effort to save their meritless discrimination claims, Plaintiffs

attempt to state a cause of action for violation of the Unruh Civil Right Act (Cal. Civ. Code §51.) Plaintiffs' Unruh claim is procedurally improper and otherwise lacks merit. As such, it must be dismissed with prejudice.

### 1. The Unruh Claim Has Not Been Authorized by the Court

As a preliminary matter, Plaintiffs' Unruh claim is procedurally improper, because it was added to the SAC without first seeking leave of Court. When the Court ruled on Wells Fargo's prior motion to dismiss, it specifically granted Plaintiffs "leave to amend and replead their claims to address the deficiencies identified in [the] order." (ECF 34, at page 16.) The Court did not sanction the addition of this, or any, new cause of action to the SAC. Thus, the Unruh claim was brought before the Court improperly. Wells Fargo asks that the Court not condone Plaintiffs' disregard for proper procedure, and dismiss the claim on that basis.

### 2. The Unruh Claim Is Without Merit

Even if Plaintiffs properly moved for leave to add a claim under the Unruh Act, the motion would have had to be denied on account of futility.[4] Plaintiffs' Unruh claim lacks merit and fails as a matter of law.

The same allegations that support Merritt's §1981 claim form the basis of Plaintiffs' Unruh claim. But these allegations are even less sufficient to support a claim under the Unruh Act.

The Unruh Act provides: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

---

[4] Leave to amend may be denied, if the proposed amendment is futile or would be subject to dismissal. *Saul v. United States*, 928 F.2d 829, 843 (9th Cir.1991) ; *Carrico v. City and County of San Francisco* 656 F.3d 1002, 1008 (9th Cir. 2011)

1  Cal.Civ.Code § 51(b). The Act provides for full and equal accommodations and
2  services "in all business establishments of any kind whatsoever." *Id.*
3    "[A] plaintiff seeking to establish a case under the Unruh Act must plead and
4  prove *intentional* discrimination." *Duronslet v. County of Los Angeles*, 266
5  F.Supp.3d 1213, 1217 (C.D. Cal. June 20, 2017), citing *Harris v. Capital Growth*
6  *Investors XIV*, 52 Cal.3d 1142, 1175, 278 Cal.Rptr. 614, 805 P.2d 873, (1991).
7    "[T]he objective of the Act is to prohibit businesses from engaging in
8  unreasonable, arbitrary or invidious discrimination.' [Citations omitted.]" (*Howe v.*
9  *Bank of America, N.A*. (2009) 179 Cal.App.4th 1443, 1450.) A claim under the
10 Unruh Act cannot survive "when the business practice appears to be valid on its face
11 as bearing a reasonable relation to appropriate commercial objectives for a public
12 enterprise." *Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1509.
13   An examination of these elements demonstrates that Plaintiffs here have
14 failed to state a claim under the Unruh Act. As detailed above, Plaintiffs'
15 allegations in the SAC do not adequately plead intentional discrimination based on
16 race to begin with. It is the plausible allegation that similarly situated white people
17 were treated better under similar circumstances that allows an inference of
18 discrimination of prohibited basis. *Charter* at 626-627. No such allegations can be
19 found in the SAC. Rather, the allegations support the only reasonable inference that
20 Wells Fargo's alleged conduct was in furtherance of a legitimate business reason,
21 *i.e.* detecting and preventing suspected financial abuse of a dependent adult, in
22 keeping with its obligations as a mandatory reporter under California Welfare and
23 Institutions Code § 15630.1. There was no shortage of red flags here. Merritt, a
24 young adult, a freshman in college, came to apply for a personal loan of
25 "approximately $1,500 to purchase football equipment as well as the video games
26 he desired." (ECF 35, ¶20.) This happened just a few months after Merritt had
27 opened a credit card account at Wells Fargo. (*Id.*) The fact that Merritt, an
28 unemployed student, had maxed out his recently opened credit card (or else he

would not need a loan) and was applying for a sizeable personal loan to buy video games, posed a particularly acute repayment risk and warranted additional scrutiny of Merritt's application. But Merritt did not readily answer the banker's questions and instead Mitchell interjected and insisted on speaking on his behalf. This alone is an objective reason for the banker to suspect potential financial abuse.

Plaintiffs allege that the reason Merritt was not speaking is because he has a speech impediment that makes it difficult for strangers to understand him. (ECF 35, SAC ¶18.) But neither the SAC, nor any prior iterations of Plaintiffs' complaint provide details about the severity of Merritt's speech impediment or allege that they explained Merritt's speech issues to the banker. The SAC states a conclusory, unsubstantiated new allegation that Merritt eventually answered "Ms. Rodriguez's questions, but it was too late…", in an apparent effort to show that Ms. Rodriguez's suspicions were unreasonable. Plaintiffs fail, because, at the very least, their allegations are internally inconsistent and raise more questions. Exactly how bad is Merritt's speech impediment? If it is so severe as to require Mitchell's help with answering basic loan application questions, then how was he later able to answer Ms. Rodrigues's questions, as Plaintiffs now allege? And if Merritt was able to eventually answer questions, why did he not speak on his own behalf to begin with? Analyzed in the light most favorable to Plaintiffs, the totality of the alleged facts and plausible inferences drawn therefrom clearly establish that Ms. Rodriguez's suspicions of financial abuse were well-founded and reasonable. Thus, her actions in connection with Merritt's loan application were in furtherance of a legitimate business purpose and cannot support a finding of Unruh violation.

Based on the foregoing, Wells Fargo requests that Plaintiffs' procedurally and substantively defective Unruh claim be dismissed with prejudice.

**D.     Plaintiffs Fail to Save Their Defamation Claims**

In its order granting Wells Fargo's motion to dismiss Plaintiffs' defamation claims, the Court found that Plaintiffs' failed to adequately allege malice. (ECF 34,

1  at page 13.)  The Court further explained that "[m]alice may be established by
2  showing that the publisher of the defamatory statement lacked reasonable grounds to
3  believe the statement was true, and therefore acted with a reckless disregard for the
4  right of the person defamed.  *Cuenca v. Safeway San Francisco Employees Fed.*
5  *Credit Union*, 180 Cal.App.3d 985, 997 (1986).  Negligence is not malice. *Cabanas*
6  *v. Gloodt Associates*, 942 F.Supp. 1295, 1301 (E.D. Cal. 1996).   The Court further
7  said that "it is not sufficient to show that the statements …were inaccurate, or even
8  unreasonable.  Only willful falsity or recklessness will suffice. *Id.* at 1301-02."
9  (ECF 34 at page 14.)

10  The allegations in the SAC are substantially the same as in the FAC.
11  Plaintiffs allege that Ms. Rodriguez accused Mitchell of taking advantage of her son
12  and accused Merritt of being mentally challenged and incompetent.  (ECF 35, SAC
13  ¶¶50, 55).  But Plaintiffs still do not allege additional facts establishing malice.

14  As the Court previously noted in its ruling on Wells Fargo's motion to
15  dismiss the first amended complaint (ECF 34), Plaintiffs' own allegations indicate
16  that Ms. Rodriguez had objective grounds to suspect financial abuse of a depended
17  adult.  This remains true with respect to allegations in the SAC.  The allegations
18  show that (1) the 18-year-old Merritt was returning to the bank to apply for a
19  personal loan to purchase football equipment and video games shortly after taking
20  out (and apparently maxing out) a credit card in his name, (2) Mitchell spoke on
21  behalf of Merritt, and (3) Mitchell never explained to Ms. Rodriguez why she
22  insisted on speaking for Merritt.  There allegations establish that Ms. Rodriquez had
23  reasonable basis for suspecting financial abuse and the alleged defamatory
24  statements in this context were not made with malice, but rather with reasonable
25  grounds to believe that the statements were true.

26  Because Plaintiffs have failed to address the deficiencies identified in the
27  Court's prior order (ECF 34), the defamation claims must be dismissed with
28  prejudice.

# V.  CONCLUSION

The determination of whether to allow leave to amend rests with the sound discretion of the district court.  *Saul v. U.S.*, 928 F.2d 829, 843 (9th Cir. 1991).  Such leave is properly denied where further amendment would be futile.  *Id.*  That appears to be the case here.  Plaintiffs have had three opportunities to state a viable claim for relief, but have failed to do so each time.  As such, Plaintiffs have already confirmed that there is no likelihood that their fundamentally deficient allegations can be cured by further amendment.  Wells Fargo respectfully requests that this Court grant its motion to dismiss without granting further leave to amend and dismiss this action with prejudice.

DATED:  April 29, 2019

SEVERSON & WERSON
A Professional Corporation

By:   */s/  Evelina Manukyan*
        Evelina Manukyan
Attorneys for Defendant
WELLS FARGO BANK, N.A. (erroneously sued as Wells Fargo Bank)